# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

### EASTERN DISTRICT.

## NEW-ORLEANS, DECEMBER, 1831.

### DURNFORD *vs.* CLARK'S ESTATE.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH AND CITY OF
NEW-ORLEANS.

EASTERN DIST.
December, 1831.

| 3 | 199 |
|---|---|
| 124 | 622 |

DURNFORD
*vs.*
CLARK'S ESTATE.

The mortgagee creditor, may oppose the plea of prescription, though the estate be not insolvent, and *that* whether there is an estate to be acquired, or a debt to be extinguished.

The authority to acknowledge a debt must be special; attorneys at law, as such, have not the power.

Prescription runs against a vacant estate, though no curator has been appointed.

Prescription plead by one creditor does not enure to the benefit of another creditor.

Where the estate is solvent, the chirography creditor has no right to plead prescription against another creditor's demand.

The heirs of Duncan and of Williams, who were creditors of the estate of Clark, opposed the plea of prescription to the claim of Durnford, who was also a creditor of the estate.

On the trial in the court below the following agreement was filed: "*Durnford's Curator vs. Clark's Estate.* The plea of prescription of five years under the new Civil Code, is waived in this case, it having been understood between the parties at a day when prescription could have been interrupted by suit, that such plea would not be made, if suit was not instituted, it being the wish of all parties, to avoid unnecessary costs (signed) Carleton & Lockett, attorneys for Mrs. Clark." The court *a quo* was of opinion, and so decreed, that the plea of prescription should be sustained. From this judgment Durnford's curator appealed.

*McCaleb*, for appellant, made the following points:

By agreement, on record, it will appear that the appellant was about to bring his suit before the prescription of five years against his note had run. To save costs and litigation the representative of Clark's estate *made acknowledgment of the right of the person whose title is here attempted to be prescribed. This acknowledgment stopped prescription,* as it was made prior to the lapse of the five years. *C. C.* 3486, 3516. *C. P.* 984–5. 2 *Martin, N. S.* 432.

2. The prescription by the above agreement was renounced and waived by the representation of Clark's estate. Of this, other creditors cannot complain, especially when it appears that there is property enough to pay all the debts. *C. C. art.* 3423–4.

3. The opposing creditors cannot plead prescription only in cases where property is to be acquired by prescription. This is debt.

*Conrad, contra.*

1. Prescription cannot be waived even by the debtor himself before it has run. *C. C. art.* 3423. Here there has been no renunciation by the debtor at any time. The curatrix of an estate or tutrix of minors has no right to renounce a legal right of the estate or of the minors. She is a mere administratrix of the property for the benefit of those interested, and cannot by her admissions deprive the creditors of any legal rights.

2. The curatrix never did admit the debt.  The law regulates the form of the admission : it must be in writing.

*Porter, J.* delivered the opinion of the court.

The appellant, in right of Thomas Durnford, deceased, claims to be received as creditor of the estate of Clark, in virtue of two promissory notes, the payment of one of which was secured by mortgage.

This claim was opposed in the court below by the heirs of Williams, and the representative of A. L. Duncan, deceased. They pleaded prescription to the demand of Durnford's estate, and this plea was sustained by the judgment of the Probate Court.  From that judgment this appeal is taken.

More than five years have elapsed since the note became due, and the debt is extinguished, unless some of the reasons advanced by the appellant, are found of sufficient force to take the case out of the general rule which governs obligations of this kind, in the matter of prescription.

The claim of the appellant is opposed by two creditors, one of whom is chirographery, and the other has a mortgage on some of the property which was hypothecated to Durnford. The view we have taken of the case requires, that their opposition should be considered separately.   We will first examine that of the heirs of Duncan, who have a mortgage.   Their claim clashes with that of the appellant for the proceeds of a negro slave, Jenny and children, who were sold for seven hundred and seventy dollars by order of the Court of Probates.

It is first objected on the part of the appellant, that there is no proof on record of the estate being insolvent, and that consequently the opposing creditors have no right to plead prescription, not having that interest in the matter which the law requires.   *La. Code,* 3429.

Whether the circumstance of the estate being solvent deprives the chirographery creditor of pleading prescription, we will examine hereafter.   In relation to the right of the mortgage creditor to do so, we entertain no doubt.  The thing being specially affected for his debt, he has a right to be paid out of the proceeds of it in the first instance, and cannot be

compelled to discuss other property. He has, therefore, an interest that no other should be paid in preference to him.

It is next objected, that though he has an interest, this is not one of the cases, in which one creditor can oppose the plea of prescription to another. The article of the code already cited, only giving such privilege where there is an estate to be acquired. Here it is a debt which is opposed.

The 3429th article in English is in these words : "Creditors and every other person who may have an interest in the acquiring an estate by prescription, have a right to plead it, even in case the person claiming such an estate, should renounce such right of prescription.

In French, it is as follows : "*Les créanciers ou toute autre personne ayant intérêt à ce que la prescription soit acquise, peuvent l'opposer, encore que le débiteur ou le propriétaire y renonce.*"

This, as it is seen, extends the right much further than the English text. It is given in all cases where the person has an interest that the plea of prescription should be used, and indicates clearly, that debt is one of them, for it specially declares that the right so conferred may be exercised where the debtor refuses to use it.

Had this law been passed since the adoption of the constitution it would have presented considerable difficulty in the construction of it. But on examination we find that it is not one of the amendments made to the Civil Code in the year 1824. It is an article of the old code, passed in the year 1808, which has been re-printed with the amendments, by legislative authority. The re-printing of the original work, together with the amendments, has induced some persons to believe that the whole code is to be taken as a new enactment, but this is not correct. The old Civil Code has never been acted on and passed as a law, except by the territorial legislature by which it was promulgated. The article, therefore, now under consideration, must be governed by the rules which we have frequently applied to laws passed antecedent to the constitution. At that time they might be enacted in either French or English, and when enacted in both, we have considered, for reasons which need not now be

repeated, that both should have effect, if possible. The application of that rule to this case, clearly confers on the opposing creditor the right to plead prescription.

The next point made by the appellant is, that the prescription was renounced and waived. This renunciation is presented in a paper signed by the attorneys at law of the representative of the estate, and dated after the prescription had accrued. In this paper they state that the prescription "is waived, it having been understood between the parties at a day when said prescription could have been interrupted by suit, that such plea would not be made if suit was not instituted, it being the wish of all parties to avoid unnecessary costs."

The *article 3423 of the Louisiana Code* declares, that prescription not yet acquired cannot be renounced. So far, therefore, as the document offered contains a renunciation of prescription, it cannot have any effect. But by the *3486th and 3517th articles of the Louisiana Code*, the acknowledgment of the debtor interrupts prescription, and it has been much debated at the bar, whether the promise not to plead prescription was an acknowledgment of the debt. We do not find it necessary to say whether in our opinion it should be so considered, for admitting it was an acknowledgment, to make that acknowledgment binding, it must be made by the debtor or some one duly authorised by him. The law requires that an agent must have a special authority to acknowledge debts. *Louisiana Code*, 2966. No such authority is shown to have been given to the persons who signed the paper produced in this instance. It cannot be implied from their quality as attorneys at law. It not being a part of their duty to acknowledge debts out of court, unless special authority is conferred on them to that effect.

The authority to acknowledge a debt must be special; attorneys at law, as such, have not the power.

Another objection remains to be noticed. It is said the prescription was interrupted by a portion of time during which Durnford, the creditor's estate was unrepresented, and suit could not be brought. The answer to that objection was furnished at the bar by reference to *3492d article of the Louisiana Code*, which declares that prescription runs against a vacant estate, though no curator has been appointed.

Prescription runs against a vacant estate, though no curator has been appointed.

' On the whole, we think the opposition made by the heirs of Duncan to the claim of the appellant must be sustained; and we have next to inquire to what amount? On looking into the documents submitted, we perceive that among the slaves sold, there were only one woman and her children who had been mortgaged to both creditors. They were sold for seven hundred and seventy dollars; and to that amount the heirs of Duncan must be paid in preference to the claim of the appellant.

There remains to examine the opposition filed on the part of Williams's estate. This is a chirographery credit, and if there be enough to pay all claims against the estate, the question has been raised, whether the creditor has an interest, which will authorise him to plead prescription, to the appellant's debt. But here another question presents itself supposing this estate to be solvent, and the other creditors without an interest to oppose the claim; does the prescription offered by the mortgage creditors and sustained by the court, extinguish the claim *in toto*, or only so far as that creditor's rights conflicted with it.

We think it must be confined to the claim of the creditor, and that it does not enure to the benefit of others. Prescription it is true, is a means of extinguishing a debt, but it is only when specially pleaded it can have that effect. Courts are not allowed to consider it an extinction of a claim, no matter what the evidence may be, unless the plea is expressly put in. *La. Code*, 3426–7. In the hypothesis of the estate being solvent, the mortgage creditor who from his lien on a particular portion has the right to oppose prescription, can in no respect be considered as the agent or representative of other creditors who do not stand before the court with the same rights. He can only use the plea for his own benefit, not for others who may, or may not have, the legal interest which would authorise them to plead it. The exception if decided against him would not bar them, and cannot profit them. We conclude, therefore, that as it is not the fact alone of the claim being extinguished by him which destroys the debt, but as with that fact the exception must be specially pleaded, we are

Prescription plead by one creditor does not enure to the benefit of another creditor.

not authorised to consider the debt of the appellant extinguished in relation to any others but the mortgage creditors by whom the plea was put in. The exception offered by him cannot be regarded as one made by the other creditors.

We must, therefore, examine the right of the chirographery creditor. It is objected that he has no interest to make this exception, there being enough to pay all; and that the law confines the right of pleading the exception to the creditors who has an interest to present such plea. On the other side it is alleged, the estate is insolvent. The evidence shows that there has been inventoried, of the estate of Clark, property, real and personal, to the amount of nineteen thousand four hundred and forty-seven dollars. Of this sum about ten thousand four hundred dollars consisted in slaves, which have been all carried out of Louisiana, by the representative of the estate, to some place unknown, except the proceeds of a few of them sold at auction for two thousand eight hundred and fifty dollars. This would leave of property yet in the state eleven thousand eight hundred and ninety-seven dollars, or thereabout. Mortgage and judgment debts amounting with interest, to between four and five thousand dollars are exhibited. There may be other claims, but we do not discover any ground for saying on the evidence before us, that the estate is insolvent; and considering it otherwise, we think the simple creditor has no *interest* in the language of the law, to oppose prescription to the appellant's debt. The plea which he has put in, must therefore, be overruled and set aside.

*Where the estate is insolvent, the chirographery creditor has no right to plead prescription against another creditor's demand.*

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be annulled and set aside: and proceeding to give such judgment as in our opinion ought to be given below, it is ordered and decreed, that the opposition filed against the claim of the estate of Durnford by the representative of A. L. Duncan's estate be sustained to the amount of the proceeds of the slave Jenny and children, say seven hundred and seventy dollars; that the opposition on behalf of the estate of James Williams, the chirographery creditor be overruled and set aside; that the costs of the

EASTERN DIST.
*December*, 1831.

appeal be paid by the appellees, and those of the court below, so far as they were occasioned by the opposition of the estate of Duncan, be paid by the appellant, and so far as they arose from the opposition of Williams's estate, that they be paid by said estate.